UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CYNTHIA PAULK, surviving spouse of Billy )
Duane Foster, Deceased for the benefit of herself )
and the children of Billy Duane Foster, Deceased: )
J.D., D.F., Duane Foster and Daphne Foster, )
CYNTHIA PAULK, individually, and J.F. )
and D.F., minor children of Billy Duane Foster, )
by and through their mother, Cynthia Paulk, )
                                                                                             )
        Plaintiffs,                                           )
                                                                                           )
v.                                                                                   ) No.: 3:12-CV-89
                                                                                  )    (VARLAN/SHIRLEY)
SEVIER COUNTY, TENNESSEE, )
SEVIER COUNTY COMMISSION, )
RONALD L. SEALS, KENT HATCHER, )
JESSEE TIMBROOK, TAMMY FINCHUM, )
ROBERT M. MAUGHON, M.D., FIRST MED., )
INC., RHETT RUTLEDGE, JOSH BRIGHT, )
JACK MOUNT, SCOTTIE VINEYARD, and )
BARRY WEBB, )
                                                                                   )
        Defendants.                                      )

## **MEMORANDUM OPINION**

This civil action is before the Court on two motions: the Motion to Dismiss on Behalf of Robert M. Maughon, M.D. [Doc. 10] filed by defendant Dr. Robert M. Maughon ("Dr. Maughon"); and a separate Motion to Dismiss filed by defendants Jessie Timbrook ("Timbrook"), Tammy Finchum ("Finchum"), and First Med, Inc. ("First Med") (collectively, "First Med defendants") [Doc. 12]. Plaintiffs submitted responses to both motions [Docs. 15, 17]. Both sets of defendants submitted replies [Docs. 20, 21]. The motions are ripe for determination. For the reasons set forth herein, Dr. Maughon's

motion to dismiss [Doc. 10] will be **GRANTED**, and Dr. Maughon will be **DISMISSED** as a party to this action.  The First Med defendants' motion to dismiss [Doc. 12] will be **DENIED**.

**I.     Facts**

On February 20, 2011, Billy Duane Foster ("the decedent") began serving a prison sentence at Sevier County Jail, where he was housed in the facility known as Dorm M-4 [Doc. 1, ¶¶ 19, 21].  On or about 7:22 a.m. on the morning of February 27, 2011, the decedent began to have a seizure in Dorm M-4 [*Id.* at ¶ 25].  Shortly thereafter defendant Timbrook, a nurse at the jail, arrived in Dorm M-4 and allegedly observed the decedent having a seizure, with involuntary movements and warm, clammy skin.  The decedent was making snoring sounds and was incoherent [*Id.* at ¶ 26].  Around 8:12 a.m. that morning, the decedent was moving with a staggering gait and was oriented only as to place.  Plaintiffs' complaint alleges that the decedent's vitals were not taken, although Dr. Maughon's memorandum in support of his motion notes that the decedent's vitals were taken by Timbrook [Doc. 11 at 3].

At around 4:00 p.m. on the afternoon of February 27, Timbrook was called back to Dorm M-4 as the decedent was having additional seizure activity [Doc. 1, ¶ 31].  Timbrook was present when the decedent had another seizure at 4:36 p.m.  At that point, after again taking his vital signs, Timbrook concluded the decedent needed to be taken to

2

Case 3:12-cv-00089   Document 37   Filed 11/30/12   Page 2 of 15   PageID #: 247

the emergency room [*Id.* at ¶ 32]. While preparing to transport the decedent, Timbrook spoke with defendant Finchum, the jail's supervising nurse. Finchum allegedly instructed Timbrook to return the decedent to his dorm and monitor him every two hours [*Id.* at ¶ 34]. At 5:15 p.m., after observing another seizure, Timbrook was instructed by Finchum to recheck the decedent's vital signs at 6:00 p.m. and administer medicine if there were further seizures. Around 5:32 p.m., defendant Josh Bright, one of the corrections officers at the prison, noted the decedent had stopped breathing and was non-responsive [*Id.* at ¶ 41]. At that time, emergency personnel were contacted and the decedent was taken to LeConte Medical Center, where he was pronounced dead at 6:11 p.m.

Plaintiffs, decedent's wife and children, then filed the instant complaint against Sevier County, the Sevier County Commission, Ronald Seals, the Sheriff of Sevier County, Kent Hatcher, the supervisor of the Sevier County Jail, several corrections officers at the jail, Finchum, Timbrook, First Med, the contracted health care provider for the jail, and Dr. Maughon, the jail doctor, on February 23, 2012. In that complaint, plaintiffs allege a violation of the decedent's civil rights under the Eighth and Fourteenth Amendments as well as a claim for negligence against the Sevier County defendants [Doc. 1, ¶¶ 48, 59].

Dr. Maughon and the First Med defendants brought the instant motions to dismiss.

3

**II.     Standard of Review**

A party may move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor will an "unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pleading must "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

### III. Analysis

#### A. Dr. Maughon

In support of his motion to dismiss, Dr. Maughon argues that plaintiffs cannot establish a civil rights claim under 42 U.S.C. § 1983 because plaintiffs have not alleged that Dr. Maughon had any knowledge of decedent's medical condition or the events surrounding his death [Doc. 11 at 6]. Therefore, Dr. Maughon contends, plaintiffs cannot establish a claim arising under the Eighth Amendment for acting with "deliberate indifference" [*Id.* (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)]. Dr. Maughon further argues that, to the extent plaintiffs can show he acted in a supervisory role as to defendants Timbrook and Finchum, § 1983 precludes liability on the basis of a theory of *respondeat superior* [*Id.* at 7 (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)]. Finally, Dr. Maughon asserts that plaintiffs do not have standing to bring a claim under § 1983 because such an action is personal to the victim [*Id.* at 10]. In their response [Doc. 17], plaintiffs argue that as the doctor for the Sevier County Jail, Dr. Maughon was responsible for the supervision of defendants Timbrook and Finchum, and that they had to receive their instructions from him. Thus, plaintiffs claim one can infer that those defendants were consulting with and receiving instructions from Dr. Maughon [Doc. 17, at 3]. Plaintiffs further argue that Dr. Maughon would have established certain policies pursuant to his duties as jail doctor, which can only be

5

discovered through the discovery process [*Id.* at 4]. Finally, plaintiffs respond that they do have standing to sue pursuant to various state statutes [*Id.*].[1]

To state a cognizable claim against an individual under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (quoting *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006)). "A physician who contracts to provide medical services to prison inmates . . . acts under color of state law for the purposes of § 1983." *McCullum v. Tepe*, 693 F.3d 696, 700 (6th Cir. 2012) (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)). The Supreme Court has held that "deliberate indifference" to a prisoner's serious illness or injury states a cause of action under § 1983 as a violation of the prisoner's rights under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (noting the Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" and citing to *Estelle*). A constitutional claim for deliberate indifference contains both an objective and subjective component. *Dominguez v. Corr. Med. Serv.*, 555 F.3d 543, 550 (6th Cir. 2009). The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), while the subjective component

---

[1] The Court will analyze Dr. Maughon's arguments based on the order of their presentment.

6

requires a plaintiff to "allege facts which, if true would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk," *Dominguez*, 555 F.3d at 550 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). "Knowledge of the asserted serious needs or of circumstances indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994).

In this case, the pleadings show, and Dr. Maughon does not contest, that the decedent's seizure activity satisfies the objective component for finding deliberate indifference. Dr. Maughon focuses on the subjective requirement, specifically arguing that plaintiffs fail to assert that he ever provided care or had knowledge of the decedent's activity [Doc. 11, at 7]. Plaintiff responds that at this stage they must only "aver and allege" facts to withstand a motion to dismiss. Plaintiffs' complaint does not meet the standard developed by *Twombly* and *Iqbal*.

Plaintiffs' complaint first refers to Dr. Maughon by identifying him as a party and stating that his responsibilities were "to provide professional and responsive healthcare services" and to hire, train, supervise, and control the jail medical department [Doc. 1, ¶ 12]. The complaint does not reference Dr. Maughon again until it lists him, along with the other defendants (with the exception of Sevier County), under the heading "Failure to Provide Constitutionally Adequate Medical Care" [*Id.* at ¶ 12]. Plaintiffs allege that Dr. Maughon, along with the other defendants, "acted with deliberate indifference," which is

7

the equivalent of reciting the elements required to recover for a violation of the Eighth Amendment rather than alleging facts that would tend to satisfy that element. Deliberate indifference is a legal conclusion which requires facts to be alleged and subsequently proven. *See Twombly*, 550 U.S. at 555 (noting a court is not "bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).

Plaintiffs have not alleged any facts in their complaint to support the claim that Dr. Maughon acted with deliberate indifference, as they have not alleged that he was aware of the decedent's condition, that he had knowledge of defendant Timbrook's actions, or that he was at the prison facility during the relevant period in question. *Cf. Phillips v. Roane Cnty.*, 534 F.3d 531, 544 (6th Cir. 2008) (finding that doctor's knowledge and conscious disregard of serious medical risk to plaintiff precluded summary judgment). Nor have plaintiffs alleged any policy set out by Dr. Maughon which would be indicative of Dr. Maughon acting with deliberate indifference. Plaintiffs only set forth the general policies of the Sevier County Prison [Doc. 1, ¶ 20]. Dr. Maughon is not mentioned in the factual narrative of the complaint, and plaintiffs have not otherwise provided any facts to support their claim. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Plaintiffs separately assert a claim based on "supervisory liability," alleging that Dr. Maughon was "responsible for the hiring, training, supervision, discipline and control of the jail medical department, jail medical staff and corrections officers to ensure the good health and wellbeing of the jail inmates" [Doc. 17 at 2]. The Sixth Circuit has held

8

that "§ 1983 liability must be based on more than *respondeat superior*, or the right to control employees." *Phillips*, 534 F.3d at 543 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "A supervisor is not liable pursuant to § 1983 for failing to train unless the supervisor either encouraged the specific incident of misconduct or in some way directly participated in it." *Id.* (internal quotations omitted); *see, e.g., Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998) ("[S]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act."); *Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988) (finding plaintiff's allegations insufficient where plaintiff did not aver "that any of the supervisory officials who [were] defendants . . . actively participated in or authorized" the alleged prohibited behavior); *Barnett v. Luttrell*, 414 F. App'x 784, 789 (6th Cir. 2011) (finding dismissal appropriate where plaintiff did not allege that the individual defendant encouraged or participated in the alleged prisoner mistreatment).

Plaintiffs' claim against Dr. Maughon is based solely upon his role as supervisor rather than any individual conduct undertaken by Dr. Maughon towards the treatment of the decedent. Plaintiffs do not allege any facts that connect Dr. Maughon's job as jail doctor to the specific acts of misconduct alleged against defendants Timbrook and Finchum. *See Barnett*, 414 F. App'x at 788 (finding plaintiff's failure to supervise claim insufficient where plaintiff did not allege that defendant took any deliberate action or otherwise involved himself personally in co-defendant's purported actions). The allegation that Dr. Maughon must have given some instruction to defendants Timbrook

9

and Finchum, as plaintiffs set forth in their response to Dr. Maughon's motion, even taken as true, cannot make out a plausible claim as the complaint does not allege that any such instruction regarding the decedent was given. Similarly, the general claim that Dr. Maughon failed to train his subordinates is better suited against Sevier County and/or First Med rather than Dr. Maughon individually, without alleging facts specific to Dr. Maughon. *See Phillips*, 534 F.3d at 544 (finding allegations of improper training more appropriate for municipality rather than supervisor). Finally, to the extent plaintiff alleges that Dr. Maughon was personally negligent in his supervision of the other nurses with respect to the decedent, this alone would not give rise to liability under the Eighth Amendment. *See Blackmore*, 390 F.3d at 895 (quoting *Farmer v. Brennan*, 511 U.S. at 834) (noting that deliberate indifference requires something more than mere negligence).

For these reasons, the Court finds that plaintiffs have not stated a claim for which relief can be granted as to Dr. Maughon. Thus, Dr. Maughon's motion to dismiss [Doc. 10] will be **GRANTED** and Dr. Maughon will be **DISMISSED** from this case.[2]

### B. First Med Defendants

In support of their motion to dismiss, the First Med defendants submit that the claims against them should be dismissed pursuant to the Supreme Court's recent decision in *Minneci v. Pollard*, 132 S. Ct. 617 (2012), based on its holding that an inmate does not have an Eighth Amendment *Bivens* claim for inadequate medical care against private

---

[2] Because the Court finds dismissal appropriate pursuant to Rule 12(b)(6) for the reasons stated above, the Court does not address Dr. Maughon's remaining arguments.

employees of a privately operated federal prison [Doc. 13 at 6]. Plaintiffs respond that *Minneci* is inapposite here because the decedent was not a federal prisoner and was not in a privately operated prison [Doc. 15 at 2].

The *Minneci* decision followed a line of Supreme Court decisions in which the Court decided whether to extend its holding in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Supreme Court held that a violation of the Fourth Amendment's protection against unreasonable searches and seizures by a federal officer could give rise to a suit for damages. *Id.* at 389. This was the first time the Court recognized an implied private action against federal officials for violating an individual's constitutional rights. Since *Bivens*, the Court has recognized a similar private right of action for a violation of the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979), and for a violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment, *Carlson v. Green* 446 U.S. 14 (1980), but has otherwise "consistently refused to extend *Bivens* to any new context or new category of defendants." *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61 (2001) (citing cases where the Court refused to recognize a claim for damages against a federal official). In *Malesko*, the Court held that a plaintiff could not bring a *Bivens* claim against a private corporation operating a halfway house under contract with the Bureau of Prisons. *Id.* at 63. The Court reasoned that a *Bivens* claim against the entity would not fulfill the goal of deterring individual federal officers from committing constitutional violations, *id.* at 71, and that the plaintiff did not lack an effective remedy in the absence

11

of a *Bivens* claim, *Id.* at 72-73. *See Wilkie v. Robbins*, 551 U.S. 537 (2007) (stating that recognition of a *Bivens* claim may require two steps: whether an adequate, alternative process for protecting the constitutional interest exists; and whether the court should exercise its judgment in "authorizing a new kind of federal litigation" (internal quotations omitted)).

In *Minneci*, the Court followed the approach outlined in *Wilkie* to decline recognizing a *Bivens* claim where a federal prisoner brought suit against a private employee working at a privately run prison.

> [W]here, as here, a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state law.

132 S. Ct. at 626. The Court focused its analysis on the fact that the plaintiff in *Minneci* had a state tort claim against the employee in question available to him that could both protect his rights and deter future constitutional violations. *Id*. at 623-24. In light of *Minneci*, several courts in this circuit have dismissed claims against private contractors in federal facilities. *See Banks v. Corr. Corp. of Am.*, No. 11-2470-JDT-dkv, 2012 WL 4321716, at *2 (W.D. Tenn. Sept. 20, 2012) (discussing *Minneci* and dismissing federal prisoner's *Bivens* action against private prison employees); *Baker v. Bannum Place of Saginaw, LLC*, No. 09-10360, 2012 WL 3930122, at *6 (E.D. Mich. Sept. 10, 2012)

(same).  The First Med defendants thus argue that here, where the decedent's family is suing a private contractor and its employees, *Minneci's* reasoning applies with equal force and the case should be dismissed.

However, plaintiffs are not bringing a *Bivens* claim against the First Med defendants but rather a cause of action under § 1983, as the decedent was a state prisoner in a state-operated facility that had contracted its medical services out to these defendants.  As discussed, *supra*, to state a viable claim under § 1983 a plaintiff must allege a constitutional violation against a person acting under the color of state law. *Heyerman v. Cnty. of Calhoun*, 680 F.3d at 647 (quoting *Sigley v. City of Parma Heights,* 437 F.3d at 533).  Specifically in the context of prison medical personnel, the Supreme Court in *West*, 487 U.S. at 55-56, held that the focus in determining whether the defendant acted under the color of state law was "the relationship among the State, the physician, and the prisoner."  The Court noted that when a state employs or contracts out to physicians, the doctor becomes "authorized and obliged to treat prison inmates" and is "clothed with the authority of state law."  *Id.* (internal quotations omitted).  The Court further noted that whether the physician is paid by contract or is "on the state payroll" does not alter the analysis.  *Id.* at 56.  The central factor to be considered is "the physician's function within the state system, not the precise terms of his employment." *Id.*; *see, e.g,. Salem v. Yukins*, No. 04-72250, 2010 WL 456861, at *18 (E.D. Mich. Feb. 4, 2010) (citation omitted).

13

The *Minneci* decision did not indicate, explicitly or implicitly, that it was overruling the line of cases associated with *West* and § 1983. In fact, the dissenting opinion in *Minneci* and the Court's opinion in *Malesko* both reference the existence of § 1983 actions in support of their respective arguments. *See Minneci*, 132 S. Ct. at 626-27 (Ginsburg, J., dissenting) (noting that if the plaintiff were incarcerated in a state-operated facility he would have a federal remedy for the alleged Eighth Amendment violation); *Malesko*, 534 U.S. at 71, n.5 (noting that report containing allegations of prison abuse largely occurred in private facilities housing state prisoners, who enjoyed cause of action under § 1983). Further, the First Med defendants have not cited to any case extending *Minneci* to § 1983 actions, while several courts have refused to do so. *See Winchester v. Marketti*, No. 11-CV-9224, 2012 WL 2076375, at *2-3 (N.D. Ill. June 8, 2012) (refusing to extend *Minneci* to "block § 1983 actions against private employees working in state prisons"); *Alajemba v. Rutherford Cnty. Adult Det. Ctr.*, No. 3:11-0472, 2012 WL 1514878, at *4 (M.D. Tenn. May 1, 2012) (stating it is "unclear" whether *Minneci* would be extended to those asserting claims against private physicians under state contract and refusing to so extend it). This Court follows their lead and declines to extend *Minneci* as requested by the First Med defendants. The First Med defendants have not adequately explained how *Minneci*, which refused to expand the narrow cause of action created by *Bivens* in a case involving a private facility housing federal prisoners, applies to the broad cause of action created by § 1983 in a case involving a state-run facility housing state prisoners. Thus, the First Med defendants' motion [Doc. 12] will be **DENIED.**

14

## IV. Conclusion

For the reasons stated herein, the Motion to Dismiss on Behalf of Robert Maughon, M.D. [Doc. 10] will be **GRANTED** and Dr. Maughon will be **DISMISSED WITH PREJUDICE** as a party to this action. The Motion to Dismiss [Doc. 12] brought by the First Med defendants will be **DENIED**.

ORDER ACCORDINGLY.

                                            s/ Thomas A. Varlan
                                            CHIEF UNITED STATES DISTRICT JUDGE