UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CYNTHIA PAULK, surviving spouse of Billy Duane Foster, Deceased for the benefit of herself and the children of Billy Duane Foster, Deceased: J.D., D.F., Duane Foster and Daphne Foster, CYNTHIA PAULK, individually, and J.F. and D.F., minor children of Billy Duane Foster, by and through their mother, Cynthia Paulk, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.: 3:12-CV-89 (VARLAN/SHIRLEY) |
| SEVIER COUNTY, TENNESSEE, SEVIER COUNTY COMMISSION, RONALD L. SEALS, KENT HATCHER, JESSEE TIMBROOK, TAMMY FINCHUM, FIRST MED., INC., RHETT RUTLEDGE, JOSH BRIGHT, JACK MOUNT, SCOTTIE VINEYARD, and BARRY WEBB, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil case is before the Court on the Motion for Summary Judgment [Doc. 34] by defendants Sevier County (the "County"), the Sevier County Commission, Ronald L. Seals, Kent Hatcher, Rhett Rutledge, Josh Bright, Jack Mount, Scottie Vineyard, and Barry Webb (collectively, the "County defendants"), in which the County defendants seek summary judgment on plaintiffs' claims related to the death of Billy Duane Foster ("Foster"). Plaintiffs filed a response and responding brief [Docs. 43, 44], noting that plaintiff agrees that summary judgment is proper for all of the County defendants on all

claims except plaintiffs' § 1983 claim against the County itself, which plaintiffs oppose. For the reasons discussed herein, the County defendants' motion [Doc. 34] will be granted, and the claims against all of these defendants will be dismissed.

**I.   Facts**

On February 20, 2011, Foster began serving a prison sentence at Sevier County Jail, where he was housed in the facility known as Dorm M-4 [Doc. 1, ¶¶ 19, 21]. On or about 7:22 a.m. on the morning of February 27, 2011, Foster began to have a seizure in Dorm M-4 [*Id.* at ¶ 25]. Shortly thereafter defendant Jesse Timbrook, a nurse at the jail, arrived in Dorm M-4 and observed Foster having a seizure, with involuntary movements and warm, clammy skin. Foster was making snoring sounds and was incoherent [*Id.* at ¶ 26]. Around 8:12 a.m. that morning, Foster was moving with a staggering gait and was oriented only as to place. Plaintiffs' complaint alleges that Foster's vitals were not taken.

At around 4:00 p.m. on the afternoon of February 27, 2011, Timbrook was called back to Dorm M-4 as Foster was having additional seizure activity [Doc. 1, ¶ 31]. Timbrook was present when Foster had another seizure at 4:36 p.m. At that point, after taking his vital signs, Timbrook concluded that Foster needed to be taken to the emergency room [*Id.* at ¶ 32]. While preparing to transport Foster, Timbrook spoke with defendant Tammy Finchum, the jail's supervising nurse. Finchum allegedly instructed Timbrook to return Foster to his dorm and monitor him every two hours [*Id.* at ¶ 34]. At 5:15 p.m., after observing another seizure, Timbrook was instructed by Finchum to recheck Foster's vital signs at 6:00 p.m. and administer medicine if there were further

2

seizures. Around 5:32 p.m., defendant Josh Bright, one of the corrections officers at the prison, noted that Foster had stopped breathing and was non-responsive [*Id.* at ¶ 41]. At that time, emergency personnel were contacted and Foster was taken to LeConte Medical Center, where he was pronounced dead at 6:11 p.m.

Plaintiffs, Foster's wife and children, then filed the instant complaint against Sevier County, the Sevier County Commission, Seals, the Sheriff of Sevier County, Hatcher, the jail supervisor, Rutledge, Bright, Mount, Vineyard, and Webb, the corrections officers at the jail, as well as Finchum, Timbrook, First Med, Inc. ("First Med"), the contracted health care provider for the jail, and Dr. Robert Maughon, the jail doctor, on February 23, 2012. In that complaint, plaintiffs allege a violation of Foster's civil rights under the Eighth and Fourteenth Amendments as well as a common law claim for negligence against the Sevier County defendants [Doc. 1, ¶¶ 48, 59].[1]

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris*

---

[1] This Court previously issued an Order dismissing plaintiffs' claims against Dr. Robert Maughon, the supervisor of the jail medical personnel [Doc. 38] for failure to state a claim for which relief could be granted [*See* Doc. 38]. The Court, however, denied a similar motion brought by First Med, Timbrook, and Finchum [*Id.*].

3

*Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.* The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III. Analysis**

Given plaintiffs' agreement that the claims against the County Commission and individual defendants should be dismissed, the only remaining issue before the Court is whether plaintiffs have presented a genuine issue of material fact as to the liability of the County for violating Foster's civil rights.[2]

In support of its motion for summary judgment, the County argues that plaintiffs' claim of liability against the County amounts to *respondeat superior*, which is an improper basis for municipal liability under § 1983. The County contends that there is no evidence of an official policy or custom that is unconstitutional so as to form a proper basis for liability, as evidenced by plaintiffs' recitation of the County's policy in their complaint. In response, plaintiffs espouse several issues which it contends can only be determined at trial including: 1) whether Sevier County had a policy, practice, or custom of refraining from transporting inmates in need of medical attention to outside health care facilities; and 2) whether Sevier County properly hired First Med to provide medical services for the jail and subsequently monitored First Med and its employees. In particular, plaintiffs submit that the actions of Timbrook on the day of the decedent's death raise a genuine issue of material fact as to "whether there were systemic or gross deficiencies in staffing or procedures" [Doc. 44 at 8].

---

[2] In particular, plaintiffs allege a violation of the Eighth Amendment, which, as applied to prisoners, encompasses a right to medical care for serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).

5

"The Supreme Court has long held that municipal governments may only be sued under § 1983 for unconstitutional or illegal municipal policies, and not for unconstitutional conduct of their employees." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 818 (6th Cir. 2007). To establish municipal liability under § 1983, the plaintiff must establish that: (1) the plaintiff's harm was caused by a constitutional violation; and (2) the municipality was responsible for that violation. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law[,]" even in the absence of a formal policy. *Id.* at 403-04 (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978)).

In this case, plaintiffs first allege that the County had a policy whereby inmates were not to be transported away from the jail to seek outside medical treatment. In the complaint, however, plaintiffs describe the County's policies regarding the treatment of inmates, including the following: "jail and medical staff refer all inmates to qualified medical personnel on an emergency basis[;]" and "the Emergency Medical Care Plan be initiated any time an inmate [is] unconscious, having serious breathing difficulties or [has] a sudden onset of bizarre behavior" [Doc. 1 § 20]. Assuming that Foster's

6

constitutional rights were violated, plaintiffs have not presented any evidence to contradict the policies in place at the jail, as set forth in their complaint. Nor have plaintiffs presented any evidence that there was a written or unwritten policy that inmates were not to be removed from the jail in case of emergency, beyond their allegations. While plaintiffs receive the benefit of having inferences drawn in their favor, plaintiffs must present some evidence from which an inference of liability may be drawn, as allegations are an insufficient basis on which to hold a trial. *See Curtis*, 778 F. Supp. at 1423. Plaintiffs have not presented any evidence that the County had a policy in place which gave rise to or was otherwise the "moving force" behind the alleged violation in this case.

Plaintiffs also argue that summary judgment is improper because there are material issues of genuine fact as to the County's training and supervision of its medical contractors' employees. Specifically, plaintiffs list the following related issues to be determined at trial:

> (1) was First Med qualified to provide medical services for the jail; (2) did Sevier County perform due diligence in selecting First Med; (3) was the contract with First Med adequate to meet the medical needs of the inmate population . . . (5) did Sevier County ensure that First Med and its employees comply with the County policies, rules, and procedures for providing medical services; (6) did Sevier County ensure and enforce First Med's compliance with the contract; and (7) was the amount of compensation provided for in the contract with First Med adequate to fund jail services.
>
> [Doc. 44 at 7-8].

"[W]here the established polices of the municipality do not violate the Constitution directly, municipalities may incur § 1983 liability where they fail to adequately train their personnel such that a constitutional policy is applied in an unconstitutional manner." *Springboro*, 477 F.3d at 818 (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)); *see also Miller v. Sanilac*, 606 F.3d 240, 254-55 (6th Cir. 2010) (noting that "[a] systematic failure to train" can be "a custom or policy which can lead to municipal liability" (citation omitted)). To succeed on a failure to train or supervise claim, the plaintiff must show the following: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). Deliberate indifference "'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813-17 (6th Cir. 2005) (quoting *Brown*, 520 U.S. at 410). As the *Miller* court noted, deliberate indifference usually requires "proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures." *Id.* (citing *Gray ex rel. Estate of Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005)); *see, e.g. Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005) (noting that, in order to establish indifference, plaintiff "must show prior instances

8

of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"). "A showing of simple or even heightened negligence will not suffice." *Brown*, 520 U.S. at 407; *see Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (noting that, in action for supervisory liability, a claim of failure to supervise or properly train cannot be based on "simple negligence").

In this case, even when drawing all inferences in plaintiff's favor, plaintiff cannot show that there is a genuine issue of material fact as to whether the County acted with deliberate indifference in its dealings with First Med, either in its decision to hire the company or its supervision and training of the company's employees once they began providing care to inmates at the Blount County jail. Even assuming that Finchum and Timbrook violated Foster's constitutional rights, this does not necessarily lead to the conclusion that it was due to an inadequate program of training or supervision on the part of the County, rather than their own actions. *See Frodge v. City of Newport*, 501 F. App'x 519, 534 (6th Cir. 2012) ("[T]he fact that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." (internal quotation marks and alterations omitted)). Moreover, plaintiffs have not presented evidence of any prior incidents or other "history of abuse" to give the County notice of the deficiencies related to the care of the inmates at the jail, or of the County's failure to cure such deficiencies in the past, so that the County disregarded a

9

known risk that this type of incident would occur. For this reason the present matter is inapposite to *Suprenant v. Rivas*, 424 F.3d 5 (1st Cir. 2005), the case relied upon by plaintiffs in their response to the County's motion for summary judgment. That case involved the First Circuit's review of a jury verdict finding liability on the part of a jail superintendent sued in his official capacity in relation to poor prison conditions. The court, in upholding the jury verdict, noted that knowledge of a substantial risk may be inferred "from the very fact that the risk was obvious," *id.* at 20, and concluded that "[t]he conditions of confinement [in the prison] were apparent to all and their risks were evident," *id.* In this case, however, plaintiffs have not presented any evidence that the County was aware or knew of the risks that their contracted medical practitioners would violate inmates' rights, such that any failure to train or supervise would constitute deliberate indifference.

The Court thus concludes that plaintiff's claims of insufficient funding, inadequate training, and the like, at best, create issues related to negligence, rather than deliberate indifference, so that they are insufficient to establish the County's liability under § 1983 as a matter of law. Accordingly, and in the absence of evidence of a custom or policy of disregarding the medical needs of inmates, the County is entitled to summary judgment as to plaintiff's claim of municipal liability under § 1983.

### IV. Conclusion

For the reasons stated herein, the County defendants' motion for summary judgment [Doc. 34] will be **GRANTED**, and plaintiff's claims against Sevier County, the Sevier County Commission, Ronald L. Seals, Kent Hatcher, Rhett Rutledge, Josh Bright, Jack Mount, Scottie Vineyard, and Barry Webb will be **DISMISSED**.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE
